FILED
U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

2003 JUN 30 PM 4: 34

CEDAR RAPIDS HDQTRS. OFFICE

BY_____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

```
                                      )
CATHOLIC ORDER OF FORESTERS,          )
FEDERATED LIFE INSURANCE CO.,         )
HOMESTEADERS LIFE CO., MENNONITE      )   No.  C 0 3 - 8 /  LRR
MUTUAL AID ASSOC. and UNITED LIFE     )
INSURANCE CO.,                        )
                                      )
         Plaintiffs,                  )
                                      )
    v.                                )   COMPLAINT
                                      )
U.S. BANCORP PIPER JAFFRAY, INC.,     )   Jury Trial Demanded
TIMOTHY OSWALD, MICHAEL CEBUHAR,      )
BEST & FLANAGAN LLP, MORRIS           )
KNOPF, BRICK, GENTRY, BOWERS,         )
SWARTZ, STOLTZE, SCHULING & LEVIS,    )
PC, and AMY BEATTIE,                  )
                                      )
         Defendants.                  )
                                      )
```

Plaintiffs Catholic Order of Foresters ("COF"), Federated Life Insurance Co. ("Federated"), Homesteaders Life Co. ("Homesteaders"), Mennonite Mutual Aid Assoc. ("Mennonite") and United Life Insurance Co. ("United Life") (COF, Federated, Homesteaders, Mennonite and United Life are collectively referred to herein as the "Bondholders"), for their Complaint against U.S. Bancorp Piper Jaffray, Inc. ("Piper"), Timothy Oswald ("Oswald"), Michael Cebuhar ("Cebuhar") (Piper, Oswald and Cebuhar are collectively referred to herein as the "Piper Defendants"), Best & Flanagan LLP ("Best"), Morris Knopf ("Knopf") (Best and Knopf are collectively referred to herein as the "Best Defendants"), Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, PC ("Brick") and Amy Beattie ("Beattie") (Brick and Beattie are collectively referred to herein as the "Brick Defendants"), state as follows:

## THE BONDS

1.      This lawsuit relates to two issuances of bonds by Crestland Cooperative, an Iowa cooperative association. Crestland issued a total of $8,385,000 of bonds (the "1998 Bonds") on August 11, 1998. Piper acted as underwriter for the 1998 Bonds.

2.      Crestland also issued a total of $2,510,000 of bonds (the "1999 Bonds") in December 1999. Piper also acted as underwriter for the issuance of the 1999 Bonds.

## THE PARTIES

3.      Plaintiff COF is an Illinois fraternal benefit society that purchased $1,500,000 of 1998 Bonds. On December 30, 1999, COF also purchased $1,100,000 of 1999 Bonds.

4.      Plaintiff Federated is a Minnesota corporation that purchased $2,885,000 of 1998 Bonds.

5.      Plaintiff Homesteaders is an Iowa corporation that purchased $500,000 of 1998 Bonds.

6.      Plaintiff United Life is an Iowa corporation that purchased $2,500,000 of 1998 Bonds.

7.      Plaintiff Mennonite is an Indiana fraternal benefit society that purchased $1,000,000 of 1998 Bonds.

8.      Defendant Piper is a Delaware corporation. It is a registered broker-dealer, and engages in the investment banking business. Its headquarters is in Minneapolis, Minnesota. It maintains an office in Des Moines, Iowa.

9.      Defendant Oswald is the managing director of Piper's Des Moines office. He played a significant role in Piper's underwriting of the 1998 and 1999 Bonds, as more fully set forth below.

10.     Defendant Cebuhar is a Piper employee. He also played a significant role in Piper's underwriting of the 1998 and 1999 Bonds, as more fully set forth below.

11.     Defendant Best is a Minnesota legal limited partnership. Best served as Piper's counsel in connection with the issuance of the 1998 and 1999 Bonds.

12.     Defendant Knopf is member of Best. He was the Best lawyer primarily responsible for representing Piper in connection with the issuance of the 1998 and 1999 Bonds.

13.     Defendant Brick is an Iowa professional corporation and is a law firm. Brick served as Crestland's outside counsel in connection with the issuance of the 1998 and 1999 Bonds.

14.     Defendant Beattie is a member of Brick. She was the Brick lawyer primarily responsible for representing Crestland in connection with the issuance of the 1998 and 1999 Bonds.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367(a) and 15 U.S.C. § 78aa. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (3).

## FACTS COMMON TO ALL COUNTS

### The 1998 Bonds and Problems with the Collateral

16.     Piper and Crestland issued the 1998 Bonds pursuant to several documents: (a) a Mortgage and Security Agreement and Fixture Financing Statement dated July 1, 1998 (the "Original Bond Mortgage"); (b) an Indenture of Trust dated July 1, 1998 (the "Original Trust Indenture"); (c) an Official Statement for the 1998 Bonds, dated July 31, 1998 (the "1998 Official Statement"); (d) an opinion letter of Brick dated August 11, 1998; and (e) an opinion letter of Best dated August 11, 1998.

17.     In connection with soliciting the Bondholders to purchase the 1998 Bonds, the Piper Defendants provided the Bondholders with the 1998 Bond documents described above, which set forth, among other things, the collateral the Bondholders would receive in exchange for purchasing the 1998 Bonds.

The Piper Defendants also made the following representations to the Bondholders about the following representations to the Bondholders about the Crestland assets that would be pledged as security for Crestland's obligations to the Bondholders in connection with their 1998 Bond purchases : (a) the Bondholders would receive a first lien and first security interest in virtually all of Crestland's property, and that the loan to value ratio of the Crestland property in which the Bondholders were getting a first lien was no more than 50%; and (b) the Bondholders would receive a first security interest in all of Crestland's revenues, including revenues stemming from Crestland's accounts.

18.     The 1998 Official Statement made several representations concerning the collateral that would secure repayment of the 1998 Bonds.   These representations are described below:

> a.     The 1998 Official Statement represents that "[t]he Series 1998 Bonds are general credit obligations of [Crestland] payable from general revenues, receipts, income, funds and assets (including the Funds, to the extent of moneys therein, and the Mortgaged Property.)" (1998 Official Statement, p. 12.) (emphasis added.)
>
> b.     The 1998 Official Statement also states:
>
>> Pursuant to the Indenture, the Series 1998 Bonds and the obligation and liability of the Company to pay any principal of or interest and premium on any Series 1998 Bonds or to perform or observe any covenant or agreement under the Indenture are general obligations, payable from general revenues, income, receipts, funds and assets of the

[Crestland], including any revenues, income and receipts available from CF Processing, L.C. ("CFP"), an Iowa limited liability company of which the Company is the sole member, after payment by CFP of annual debt service payments on CFP's outstanding Industrial Development Revenue Bonds and equipment leases, to the extent and upon terms as provided in the Indenture.

(Id., p. 11.) (emphasis added.)

c.     The "Summary of Certain Provisions of the Mortgage and Security Agreement", attached as an Exhibit C to the 1998 Official Statement represents that the Original Bond Mortgage provides as follows:

[T]he Mortgagor grants, bargains, sells, conveys, transfers, assigns, sets over, mortgages, grants a security interest in and warrants...the following described properties...(the "Mortgaged Property"):

A. [Crestland's] fee interests in and to all of the tracts and parcels of land located in Union County, Iowa, Guthrie County, Iowa and Page County, Iowa...

\*     \*     \*

I. All revenues of [Crestland] from all sources and all accounts (as defined in Article 9 of the Iowa Uniform Commercial Code) of [Crestland], all whether presently in existence or hereafter created.

(Id., App. C, pp. C-32-C33.) (emphasis added.)

19.     The form of Original Bond Mortgage appended to the 1998 Official Statement indicated as follows:

[T]he Mortgagor grants, bargains, sells, conveys, transfers, assigns, sets over, mortgages, grants a security interest in and warrants...the following described properties...(the "Mortgaged Property"):

A. [Crestland's] fee interests in and to all of the tracts or parcels of land located in Union County, Iowa, Guthrie County, Iowa and Page County, Iowa...

\*   \*   \*

l.  All revenues of [Crestland] from all sources whether presently in existence or hereafter created.

(Original Bond Mortgage, pp. 1-2.) (emphasis added.)

20.  Notwithstanding the language of the 1998 Official Statement, the actual Original Bond Mortgage failed to grant the Bondholders a security interest in all of Crestland's property in the referenced counties. Crestland and Piper and their respective counsel failed to include legal descriptions of all of the properties in the Original Bond Mortgage; and (ii) omitted the word "accounts" from the description of the collateral.

21.  Also notwithstanding the language of the 1998 Official Statement, the final Original Bond Mortgage also failed to include the word "accounts" in the items of collateral on which the Bondholders were granted a lien.

22.  Section 2.16 of the Original Trust Indenture provided that, before Crestland would be permitted to issue additional bonds under the Indenture or incur additional debt secured on parity with the Bonds, Crestland would be required to deliver to the trustee a certification from Crestland's auditor or accountant (the "Accountant's Certificate") that the net revenues available for debt service for the last two preceding fiscal years were equal to: (a) at least 300% of the maximum amount that will be required in any fiscal year during the life of the outstanding 1998 Bonds and additional debt for interest on the 1998 Bonds and all additional debt outstanding and the additional debt then proposed to be issued and (b) at least 250% of the maximum amount that will be required in any fiscal year during the life of the then outstanding Bonds and additional debt for both principal and interest on the 1998 Bonds and all additional debt outstanding and additional debt then proposed to be issued. The Original Trust Indenture further provided that, before Crestland would be permitted to issue additional bonds under the Indenture or additional debt secured on parity with the Bonds, Crestland would be

required to deliver to the trustee a report that the replacement value of the Mortgaged Property is at least two times the outstanding principal amount of the outstanding 1998 Bonds, any other parity debt and the proposed additional debt and that, in order to satisfy this test, Crestland could grant a first mortgage on additional property having such replacement value as would, when added to the replacement value of the mortgaged property, meet this two times requirement.

23. The "trade date" for the 1998 Bonds was July 31, 1998. After the July 31, 1998 trade date for the 1998 Bonds, but prior to the August 11, 1998 settlement date for the 1998 Bonds, without the knowledge of the Bondholders, and without reflecting the change in the 1998 Official Statement, the Defendants attempted to change the Original Bond Mortgage to the effect that the lien and security interest granted by Crestland to the Bondholders did not extend to Crestland's accounts (and these parties are taking the position, in the Crestland bankruptcy proceeding described below, that the Bondholders' lien does not in fact extend to Crestland's accounts).

24. The 1998 Official Statement indicated that on the date of the issuance and delivery of the 1998 Bonds, Brick would deliver its opinion that the 1998 Bonds, the Original Trust Indenture and the Original Bond Mortgage were valid and legally binding obligations of Crestland, and that Best was acting as counsel for Piper in connection with the issuance of the 1998 Bonds. (1998 Official Statement, p. 28.) Despite the (attempted) changes to the collateral securing the 1998 Bonds, and though the changes were not reflected in the 1998 Official Statement, Brick and Best each provided opinions to the Bondholders that, based upon their respective reviews of the 1998 Official Statement and the Original Bond Mortgage (among other 1998 Bond documents), each had "no actual knowledge of facts which leads [it] to believe that the information set forth in the Official Statement contains an untrue statement of material fact

or omits to state a material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading."

25. Piper acquired the 1998 Bonds pursuant to 1998 Bond Purchase Agreement dated July 31, 1998. Piper completed the resale of the Bonds to the Bondholders on August 11, 1998.

26. Notwithstanding the representations in the 1998 Official Statement, the final version of the Original Bond Mortgage did not, ultimately, cover all of Crestland's property in Union, Guthrie and Page Counties, in Iowa.

27. In purchasing the 1998 Bonds, the Bondholders relied on the truth and completeness of the 1998 Official Statement. However, at no time prior to or after they sold the 1998 Bonds to the Bondholders did any Defendant inform the Bondholders that the 1998 Official Statement or the Original Bond Mortgage contained false and misleading information about the 1998 Bonds or that, despite the representations contained in the 1998 Official Statement, the 1998 Bonds were not secured by a mortgage on all of Crestland's real property located in Union, Guthrie and Page Counties, Iowa and were not secured by a pledge of Crestland's accounts.

## The 1999 Bonds and the Failure to Satisfy the Conditions for Issuance of Additional Bonds

28. In December 1999, Crestland issued the 1999 Bonds pursuant to: (a) the Original Bond Mortgage; (b) the First Amendment to the Original Bond Mortgage dated December 1, 1999; (c) the Original Trust Indenture; (d) an Official Statement of the 1999 Bonds dated December 23, 1999 (the "1999 Official Statement"); (e) opinion letters from the Best and Brick Defendants dated December 30, 1999; (f) a March 29, 1999 letter from Crestland's accountants Meriwether, Wilson & Company, PLC ("Meriwether") included in the 1999 Bond closing documents by the Piper Defendants (the "Meriwether Letter"); and (g) a Certificate of Crestland Cooperative under Section 2.16 of the Indenture (the "Crestland 2.16 Certificate").

29.     In connection with soliciting COF to purchase the 1999 Bonds, the Defendants provided COF with the 1999 Official Statement which set forth the collateral Crestland would provide to COF and the other 1999 Bondholders to secure repayment of the 1999 Bonds, and the sources of funds for repayment of the 1999 Bonds:

> a.     Under the heading "Sources of Payment and Security for the Series 1999 Bonds" of the 1999 Official Statement, the Official Statement states in bold: "The Series 1999 Bonds are general credit obligations of [Crestland] payable, on a parity basis with the Series 1998 Bonds, from general revenues, receipts, income, funds and assets (including the Funds, to the extent of moneys therein, and the Mortgaged Property.)" (1999 Official Statement, p. 2.) (emphasis added.)
>
> b.     The 1999 Official Statement states, under the heading "Sources of Payment and Security for the Series Bonds":
>
> > Pursuant to the Indenture, the Series 1998 Bonds and the Series 1999 Bonds and the obligation and liability of the Company to pay any principal of or interest and premium on any Series 1998 Bonds or Series 1999 Bonds or to perform or observe any covenant or agreement under the Indenture are general obligations, payable from general revenues, income, receipts, funds and assets of the [Crestland], including any revenues, income and receipts available from CF Processing, L.C. ("CFP"), an Iowa limited liability company of which the Company is the sole member, after payment by CFP of annual debt service payments on CFP's outstanding Industrial Development Revenue Bonds and equipment leases, to the extent and upon terms as provided in the Indenture.
>
> (Id., p. 13.) (emphasis added.)

c.  The "Summary of Certain Provisions of the Mortgage and Security

Agreement", in Appendix C of the 1999 Official Statement,

indicated the Original Mortgage had been amended as follows:

> [T]he Mortgagor grants, bargains, sells, conveys,
> transfers, assigns, sets over, mortgages, grants a
> security interest in and warrants…the following
> described properties…(the "Mortgaged Property"):
> A. [Crestland's] fee interests in and to all of the
> tracts and parcels of land located in Union County,
> Iowa, Guthrie County, Iowa, Page County, Iowa
> and Adair County, Iowa

> *     *     *

> I.  All revenues of [Crestland] from all sources and all
> accounts (as defined in Article 9 of the Iowa Uniform Commercial
> Code) of [Crestland], all whether presently in existence or
> hereafter created.

> (Id., App. C, pp. C-34-C35.) (emphasis added.)

30.  However, the First Amendment to the Original Bond Mortgage provided

with the 1999 Bonds' issuance provided as follows:

> [T]he Mortgagor grants, bargains, sells, conveys, transfers, assigns, sets
> over, mortgages, grants a security interest in and warrants…the following
> described properties…(the "Mortgaged Property"): A. [Crestland's] fee
> interests in and to all of the tracts or parcels of land located in Union
> County, Iowa, Guthrie County, Iowa and Page County, Iowa;

> ***

> I.  All revenues of [Crestland] from all sources whether presently in
> existence or hereafter created"

31.  Notably, the actual language of the First Amendment not only continued

to exclude the properties of Crestland in the referenced counties that were improperly left out of

the Original Bond Mortgage, but also failed to add any additional property in Adair County, Iowa,

though the 1999 Official Statement specifically represented that this additional property would

be added to the property subject to the Original Bond Mortgage.

32.     The 1999 Official Statement also indicated that on the date of the issuance and delivery of the 1999 Bonds, Brick would deliver its opinion that the 1999 Bonds, the Original Trust Indenture and the Original Bond Mortgage and other 1999 Bond documents were valid and legally binding obligations of Crestland, and that Best was acting as counsel for Piper in connection with the issuance of the 1999 Bonds. (1999 Official Statement, pp. 39-40.)

33.     As set forth above, in order to issue the 1999 Bonds in compliance with Section 2.16 of the Original Trust Indenture, the Piper Defendants had to obtain (a) the Crestland Accountants' Certificate and (b) a replaced value report.

34.     In December 1999, in connection with the issuance of the 1999 Bonds, the Piper Defendants tried to obtain the Accountants' Certificate from Meriwether. Meriwether, however, declined to furnish the required Accountants' Certificate to Crestland and the Piper Defendants.

35.     Because they could not obtain a current Accountant's Certificate from Meriwether, Crestland and the Piper Defendants attempted to satisfy the Accountant's Certificate condition by delivering the Meriwether Letter, dated March 24, 1999. The Meriwether Letter, however, did not comply with Section 2.16 of the Original Trust Indenture. Rather the Meriwether Letter had been obtained in connection with a failed offering of bonds by Crestland in early 1999.   Crestland's failed offering contemplated a sale of $8,000,000 of Bonds.  The Meriwether Letter was inadequate for the sale of the 1999 Bonds because Crestland's fiscal year ended on August 31, 1999.  Thus, the Meriwether Letter dated March 29, 1999, was outdated by December 1999, because Crestland had completed another fiscal year after the date of the Meriwether Letter and before the issuance of the 1999 Bonds. Because Crestland had completed another fiscal year, Section 2.16 of the Indenture required Crestland to obtain a new Accountants' Certificate, which was required to address the recently concluded fiscal year.

36. The replacement value report delivered in connection with the issuance of the 1999 Bonds stated as follows: "[Crestland] has granted a first mortgage on additional property having such replacement value as will, when added to the replacement value of the Mortgaged Property, meet the two (2) times requirement." (emphasis added.) The replacement value report was false. In fact, despite the representation in the 1999 Official Statement that Crestland would grant a mortgage on all of Crestland's property in Adair County, Iowa, Crestland had not provided a mortgage on any more of its property beyond the property described in the Original Bond Mortgage.

37. Piper acquired the 1999 Bonds pursuant to 1999 Bond Purchase Agreement dated December 23, 1999. Thereafter, the Piper Defendants continued soliciting COF and other 1999 bondholders to purchase the 1999 Bonds, which COF did on December 30, 1999, relying upon the representations of the Defendants, including the 1998 and 1999 Bond documents provided to it in connection with the transaction, as set forth above.

38. Notwithstanding (i) that the Original Bond Mortgage, as amended by the First Amendment, did not cover all of Crestland's property in Union, Guthrie, Page and Adair Counties, in Iowa; (ii) that the Original Bond Mortgage, as amended by the First Amendment, did not cover the accounts of Crestland; (iii) that no valid Accountant's Letter had been delivered; and (iv) that Crestland had delivered a plainly false replacement value report, Best provided the following opinion in connection with the issuance of 1999 Bonds: "[n]othing has come to our attention which would lead us to believe that the Official Statement . . . contains any untrue statement of material fact or omits to state a material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading."

39. Likewise, notwithstanding the failures set forth in the preceding paragraph, Brick issued its opinion in connection with the issuance of the 1999 Bonds that it had

no "knowledge of facts which lead [it] to believe that the information set forth in the Official Statement contains an untrue statement of material fact or omits to state a material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading."

40.     At no time prior to or after they sold the 1999 Bonds to COF did any Defendant inform COF that the 1999 Official Statement or any of the 1999 Bond documents set forth herein contained false and misleading information about the 1999 Bonds or that, despite the representations contained in the 1999 Bond documents, the 1999 Bonds were not secured by either all of Crestland's property located in Union, Guthrie, Page and Adair Counties, Iowa or Crestland's accounts. In addition, at no time prior to or after they sold the 1999 Bonds to COF and the other 1999 bondholders did any Defendant inform the Bondholders that the 1999 Bonds violated Section 2.16 of the Original Trust Indenture.

## Crestland's Bankruptcy

41.     On or about September 26, 2001, Crestland filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court in the Southern District of Iowa, No. 01-05005CJ (which has since been converted to a Chapter 7 proceeding). In that proceeding, U.S. Bank N.A. ("USB") and Crestland filed a cash collateral stipulation, in which USB revealed a dispute between the Bondholders and USB over their respective claims to Crestland's "accounts." The stipulation provided that USB could collect and apply all of Crestland's accounts subject to disgorgement if it is determined that the Bondholders have a superior right to Crestland's accounts. Since then, USB filed a proof of claim in Crestland's bankruptcy proceedings for amounts owing under a loan agreement between it and Crestland. USB's proof of claim alleged that its loan agreement with Crestland was secured by a lien on all of Crestland's accounts.

42.    Thereafter, on or about May 15, 2002, USB filed an adversary proceeding against the Bondholders' current indenture trustee, Wachovia Bank, N.A. ("Wachovia"), and Crestland alleging that USB holds a first priority security interest in Crestland's accounts. In particular, USB claims that Wachovia and the Bondholders it represents do not have a security interest in Crestland's accounts because the word "accounts" was removed from the Original Bond Mortgage, by the Defendants. Wachovia has denied USB's contentions, and USB's adversary proceeding is currently pending.

43.    In addition, in the bankruptcy proceeding, Crestland and the Chapter 7 trustee have taken the position that the Bondholders in fact do not hold a first security interest in all of Crestland's property located in Union, Guthrie, Page and Adair Counties, because the legal descriptions attached to the Original Bond Mortgage are the governing documents for determining the scope of the mortgage, and the legal descriptions do not cover all such property.

## COUNT 1

### (Violations of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder by the Piper Defendants Relating to the Security for the Bonds)

44.    Bondholders restate each of the foregoing paragraphs as paragraph 44 of this Count 1.

45.    Prior to the issuance of the 1998 Bonds to the Bondholders, Piper delivered a copy of the 1998 Official Statement to each of the 1998 Bondholders.

46.    Prior to the issuance of the 1999 Bonds to the 1999 Bondholders, Piper delivered a copy of the 1999 Official Statement to each of the 1999 bondholders, including COF.

47.    The 1998 and 1999 Official Statements represented that the Bonds were secured by Crestland's "accounts."

48.     The representations in the 1998 and 1999 Official Statements that the Bonds were secured by Crestland's accounts were false. Moreover, the 1998 and 1999 Official Statements failed to disclose that the Bonds were not secured by Crestland's accounts. The Piper Defendants knew or were reckless as to the existence of this fact because the Piper Defendants participated in negotiations with Ag Credit to exclude the accounts of Crestland from the security for the Bonds and ultimately agreed to permit accounts to be excluded from the assets of Crestland pledged to secure the Bonds.

49.     The 1998 and 1999 Official Statements represented that the Bonds were secured by a mortgage on all of the real property of Crestland in Union, Guthrie and Page counties, in Iowa.

50.     The representations in the 1998 and 1999 Official Statements that the Bonds were secured by mortgage on all of the real property of Crestland in Union, Guthrie and Page counties, in Iowa, were false. The Mortgage, which was already in place at the time Piper delivered to the 1998 Bondholders the final 1998 Official Statement and delivered to the 1999 bondholders the 1999 Official Statement, did not cover all of the property of Crestland in Union, Guthrie and Page counties, in Iowa. Further, the 1998 and 1999 Official Statements omitted to state that the property that was actually subject to the Mortgage did not include all of the real property of Crestland Union, Guthrie and Page counties, in Iowa. The Piper Defendants knew or were reckless as to the existence of this fact because they were involved in negotiations with Crestland concerning the real property of Crestland that was to be made subject to the Mortgage.

51.     Each of the Piper Defendants had several motives to make the misrepresentations and omissions described above:

> a.     Piper itself had purchased both the 1998 Bonds and the 1999 Bonds, and would have been forced to hold the Bonds itself if it

was unable to induce the Bondholders to purchase the Bonds. Had it disclosed the modifications to the collateral securing repayment of the Bonds it would have been unable to sell the Bonds to the Bondholders. This would have significant negative consequences for each of the Piper Defendants.

b.    Piper made a substantial profit on the sale of the Bonds. However, had Piper not made the misrepresentations and omissions alleged above, it would not have realized the profit it made.

c.    The success of the offerings of the Bonds increased the likelihood that Piper and the individual Piper Defendants would have the opportunity to provide additional underwriting services to Crestland and other issuers.

d.    The individual Piper Defendants also each had a motive to make the misrepresentations and omissions alleged, in that the compensation paid to each by Piper was, on information and belief, directly or indirectly related to the profits realized by Piper on the sales of the Bonds, and each of them was aware of this fact.

52.    The Bondholders justifiably relied on the 1998 Official Statement and were unaware of the misrepresentations and omissions in the 1998 Official Statement.

53.    COF justifiably relied on the 1999 Official Statement and was unaware of the misrepresentations and omissions in the 1999 Official Statement.

54.    The representations and omissions set forth in the 1998 Official Statement were material in the 1998 Bondholders' decision to invest in the Bonds.

55. The representations and omissions set forth in the 1999 Official Statement were material in COF's decision to invest in the Bonds.

56. The false and misleading representations and omissions in the Official Statements were rendered in connection with the sale and/or purchase of securities.

57. The Piper Defendants intended that the Bondholders rely on the representations and omissions set forth above.

58. The Bondholders reasonably and justifiably relied on the representations and omissions set forth above in purchasing the Bonds.

59. The Piper Defendants directly and/or indirectly used interstate commerce, including, but not limited to, mailing the 1998 and 1999 Official Statement across state lines, to circulate false and misleading information to prospective purchasers of the Bonds.

60. As a result of the Piper Defendant's violations of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, the Bondholders suffered damages.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against the Piper Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, attorneys' fees, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 2

### (Violation of Section 12 of the Securities Act of 1934 by Piper Relating to the Security for the Bonds)

61. Bondholders restate each of the foregoing Paragraphs as Paragraph 61 of this Count 2.

62. Each of the Piper Defendants offered for sale and sold the 1998 Bonds by means of the 1998 Official Statement and offered for sale and sold the 1999 Bonds by means of

the 1999 Official Statement. The 1998 and 1999 Official Statements constituted a "prospectus" as such term is used in Section 12 of the Securities Act of 1933.

63.     Each of the 1998 and 1999 Official Statements contained untrue statements of material facts and omissions of material facts necessary to make the statements made in the Official Statements, when made, not misleading.

64.     Each of the Bondholders purchased 1998 Bonds from Piper.

65.     COF purchased 1999 Bonds from Piper.

66.     The Bondholders justifiably relied on the 1998 Official Statement and were unaware of the misrepresentations and omissions in the 1998 Official Statement.

67.     COF justifiably relied on the 1999 Official Statement and was unaware of the misrepresentations and omissions in the 1999 Official Statement.

68.     The Bondholders would not have acquired the 1998 Bonds if they had known of the misrepresentations and omissions in the 1998 Official Statement.

69.     COF would not have acquired the 1999 Bonds if it had known of the misrepresentations and omissions in the 1999 Official Statement, and the Bondholders would not have allowed the issuance of the 1999 Bonds had the Section 2.16 violation been known by them.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against Piper, for the actual damages sustained by such Plaintiff resulting from the conduct described above, along with costs, attorneys' fees, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 3

### (Violations of the Iowa Uniform Securities Act: §§ 502.401, 502.404, 502.502(2) and 502.503 by the Piper Defendants Relating to the Security for the Bonds)

70. Bondholders restate each of the foregoing Paragraphs as Paragraph 70 of this Count 3.

71. The actions of Piper described above constitute violations of Section 502.401 502.404, 502.502(2) of the Iowa Uniform Securities Act.

72. The actions of Oswald and Cebuhar described above constitute violations of Section 502.503 of the Iowa Securities Act.

73. As a result of the violations of the Iowa Securities Act set forth above, the Bondholders suffered damages.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against the Piper Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, costs, attorneys' fees, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 4

### (Common Law Fraud by the Piper Defendants)

74. Bondholders restate each of the foregoing Paragraphs as Paragraph 74 of this Count 4.

75. As set forth in detail above, the Piper Defendants made misrepresentations and omissions to the Bondholders by their delivery to the Bondholders of the 1998 Official Statement and by their delivery to COF of the 1999 Official Statement.

76. Piper knew of the misrepresentations and omissions in the 1998 and 1999 Official Statements, and intended to deceive the Bondholders and COF thereby.

77. The Bondholders relied on the misrepresentations and omissions in the 1998 Official Statement, and COF relied on the misrepresentations and omissions in the 1999 Official Statement.

78. The above described reliance on the Official Statements was reasonable.

79.     The misrepresentations and omissions in the 1998 Official Statement caused damages to the Bondholders, insofar as the Bondholders would not have purchased the 1998 Bonds if the misrepresentations and omissions in the 1998 Official Statement had not been made.

80.     The misrepresentations and omissions in the 1999 Official Statement caused damages to COF, insofar as COF would not have purchased the 1999 Bonds if the misrepresentations and omissions in the 1999 Official Statement had not been made, and the Bondholders would not have permitted the issuance of the 1999 Bonds had the Section 2.16 violation been known by them.

81.     The actions of the Piper Defendants were extreme and outrageous, and were undertaken with willful and wanton disregard for the rights of the Bondholders.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against the Piper Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, punitive damages, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 5

### (Negligent Misrepresentation by the Piper Defendants Relating to the Security for the Bonds)

82.     Bondholders restate each of the foregoing Paragraphs as Paragraph 82 of this Count 5.

83.     As a securities broker-dealer, Piper is in the business of providing information. As individual registered representatives of Piper, Oswald and Cebuhar are also in the business of providing information.

84.     As the underwriter and investment brokers, respectively, in connection with the issuance of the Bonds, Piper and Oswald and Cebuhar acted in the ordinary course of

their business, profession and/or employment, and had a pecuniary interest in the 1998 and 1999 bond transactions.

85.     Prior to the issuance of the 1998 Bonds to the Bondholders, the Piper Defendants helped prepare and then delivered a copy of the 1998 Official Statement to each of the 1998 Bondholders.

86.     Prior to the issuance of the 1999 Bonds to COF, the Piper Defendants helped prepare and then delivered a copy of the 1999 Official Statement to COF.

87.     The information supplied by the Piper Defendants in the 1998 Official Statement was for the benefit the Bondholders. The information supplied by the Piper Defendants in the 1999 Official Statement was for the benefit of COF and the other 1999 bondholders.

88.     The Piper Defendants knew or should have known that the Bondholders were relying on the information the Piper Defendants provided them in the 1998 Official Statement and intended to influence the Bondholders with that information.

89.     The Piper Defendants knew or should have known that COF was relying on the information the Piper Defendants provided them in the 1999 Official Statement and intended to influence COF with that information.

90.     The Bondholders justifiably relied on the information the Piper Defendants provided them in the 1998 Official Statement. COF justifiably relied on the information the Piper Defendants provided it in the 1999 Official Statement.

91.     The Piper Defendants' negligent misrepresentations, described above, caused the Bondholders to suffer damages.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against the Piper Defendants, for the actual damages sustained by such Plaintiff

resulting from the conduct described above, along with costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 6

### (Negligence of Piper Relating to the Security for the Bonds)

92.    Bondholders restate each of the foregoing Paragraphs as Paragraph 92 of this Count 6.

93.    As the underwriter of the 1998 Bonds, Piper owed a duty to carefully investigate the accuracy of the information provided in the 1998 Official Statement.

94.    As the underwriter of the 1999 Bonds, Piper owed a duty to carefully investigate the accuracy of the information provided in the 1999 Official Statement.

95.    Piper breached that duty of care in connection with both 1998 and 1999 Bond issuances by failing to assure (a) that the Bondholders were being granted a valid first lien on the accounts of Crestland; and (b) that the Bondholders were being granted a valid first mortgage on all of the real property of Crestland in Union, Guthrie and Page counties, in Iowa. In connection with the 1999 Bond issuance, Piper also breached its duty of care by failing to assure that the Bondholders were being granted a valid first mortgage on all of the real property of Crestland in Adair County, Iowa.

96.    Piper's breach of its duty of care was the proximate cause of the Bondholders injuries in that it caused them to purchase the Bonds without all of the collateral that they were told they would receive in the 1998 Official Statement and the 1999 Official Statement.

97.    Piper's negligence caused the Bondholders to suffer damages.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against Piper, for the actual damages sustained by such Plaintiff resulting from the

conduct described above, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 7

### (Breach of Fiduciary Duty Relating to the Security for the Bonds)

98.    Bondholders restate each of the foregoing Paragraphs as Paragraph 98 of this Count 7.

99.    As a securities broker in the transaction in which the Bondholders purchased the Bonds, the Piper Defendants owed fiduciary duties to the Bondholders.

100.    The Piper Defendants breached its fiduciary duty to each of the Bondholders in connection with such Bondholder's purchase of the Bonds.

101.    The Bondholders have been damaged as a result of the Piper Defendant's breach of their fiduciary duties.

102.    The actions of the Piper Defendants were extreme and outrageous, and were undertaken with willful and wanton disregard for the rights of the Bondholders.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against the Piper Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, punitive damages, costs, attorneys' fees and expenses and interest as allowed by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 8

### (Aiding and Abetting Violations of the Iowa Securities Act by the Brick Defendants Relating to the Security for the Bonds)

103. Bondholders restate each of the foregoing Paragraphs as Paragraph 103 of this Count 8.

104. Crestland violated Section 502.502 of the Iowa Code in the sale of the 1998 Bonds and the 1999 Bonds.

105. The Brick Defendants were agents of Crestland in connection with the sale of the 1998 Bonds and the 1999 Bonds.

106. In violation of Section 502.503 of the Iowa Code, the Brick Defendants materially aided and abetted the sale of the 1998 Bonds and the 1999 Bonds.

107. The Brick Defendants are liable to the Bondholders pursuant to Section 502.503(1) of the Iowa Code.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against the Brick Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, costs, attorneys' fees and expenses, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 9

### (Aiding and Abetting Violations of the Iowa Securities Act by the Best Defendants Relating to the Security for the Bonds)

108. Bondholders restate each of the foregoing Paragraphs as Paragraph 108 of this Count 9.

109. Piper violated Section 502.502 of the Iowa Code in the sale of the 1998 Bonds and the 1999 Bonds.

110. The Best Defendants were agents of Piper in connection with the sale of the 1998 Bonds and the 1999 Bonds.

111. In violation of Section 502.503 of the Iowa Code, the Best Defendants materially aided and abetted the sale of the 1998 and 1999 Bonds.

112. The Best Defendants are liable to the Bondholders pursuant to Section 502.503(1) of the Iowa Code.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against the Best Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, along with costs, attorneys' fees and interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 10

### (Negligence of Brick Relating to the Security for the Bonds)

113. Bondholders restate each of the foregoing paragraphs as Paragraph 113 of this Count 10.

114. Brick issued an opinion letter in connection with the issuance of both the 1998 and 1999 Bonds.

115. The Brick opinion letter in connection with the issuance of the 1998 Bonds and the 1999 Bonds represented that to Brick's knowledge there were no material misrepresentations or omissions in the 1998 or 1999 Official Statements.

116. The foregoing statement in the Brick opinion letter was inaccurate, insofar as each of the 1998 and 1999 Official Statements represented: (a) that the Bondholders were being granted a valid first lien on the accounts of Crestland; and (b) that the Bondholders were being granted a valid first mortgage on all of the real property of Crestland in Union, Guthrie and Page counties, in Iowa, while in fact, neither representation was true.

117. Brick was aware of the facts establishing that each of these statements was untrue.

118.    Brick could foresee that the Bondholders would rely on the foregoing statement in its opinion letter. Accordingly, Brick owed a duty to the Bondholders to act with due care in the issuance of its opinion letters in connection with the 1998 and 1999 Bonds.

119.    The failure of Brick to exercise due care in the issuance of its opinion letter caused damage to the Bondholders.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against Brick, for the actual damages sustained by such Plaintiff resulting from the conduct described above, along with costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 11

### (Negligence of Best Relating to the Security for the Bonds)

120.    Bondholders restate each of the foregoing Paragraphs as Paragraph 120 of this Count 11.

121.    Best issued an opinion letter in connection with the issuance of each of the 1998 Bonds and the 1999 Bonds.

122.    The Best opinion letter stated that to Best's knowledge, there were no material misstatements or omissions in the 1998 or 1999 Official Statements.

123.    The foregoing statement in the Best opinion letter was inaccurate, insofar as each of the 1998 and 1999 Official Statements represented: (a) that the Bondholders were being granted a valid first lien on the accounts of Crestland; and (b) that the Bondholders were being granted a valid first mortgage on all of the real property of Crestland in Union, Guthrie and Page counties, in Iowa, while in fact, neither representation was true.

124.    Best was aware of the facts establishing that each of these statements was untrue.

125.     Best could foresee that the Bondholders would rely on the foregoing statement in its opinion letter. Accordingly, Best owed a duty to the Bondholders to act with due care in the issuance of its opinion letters in connection with the 1998 and 1999 Bonds.

126.     The failure of Best to exercise due care in the issuance of its opinion letter caused damage to the Bondholders.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against Best, for the actual damages sustained by such Plaintiff resulting from the conduct described above, along with costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 12

### (Negligent Misrepresentation by Brick Relating to the Security for the Bonds)

127.     Bondholders restate each of the foregoing Paragraphs as Paragraph 127 of this Count 12.

128.     As a law firm, Brick is in the business of providing information.

129.     Brick owed a duty to the Bondholders to use due care to provide accurate information in its opinion letters delivered in connection with the issuances of the 1998 Bonds and the 1999 Bonds. Brick could foresee that the Bondholders would rely on its opinion letters.

130.     Brick's opinion letters in connection the 1998 Bonds and the 1999 Bonds contained material misrepresentations, as set forth above.

131.     The Bondholders relied on the representations in the Brick opinion letters in connection with their purchases of the 1998 and 1999 Bonds.

132.     Brick breached its duty of due care by its failure to assure that its opinion letters in connection with the issuances of the 1998 and 1999 Bonds were accurate.

133.     Brick's negligent misrepresentations caused damage to the Bondholders.

WHEREFORE, each Bondholder respectfully requests judgment in its favor and against Brick in the amount of its damages caused by the conduct of Brick set forth above, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 13

### (Negligent Misrepresentation by Best Relating to the Security for the Bonds)

134.    Bondholders restate each of the foregoing Paragraphs as Paragraph 134 of this Count 13.

135.    As a law firm, Best is in the business of providing information.

136.    Best owed a duty to the Bondholders to use due care to provide accurate information in its opinion letters delivered in connection with the issuances of the 1998 and 1999 Bonds. Best could foresee that the Bondholders would rely on its opinion letters.

137.    Best's opinion letters in connection the 1998 Bonds and the 1999 Bonds contained material misrepresentations, as set forth above.

138.    The Bondholders relied on the representations in the Best opinion letters in connection with their purchases of the 1998 and 1999 Bonds.

139.    Best breached its duty of due care by its failure to assure that its opinion letters in connection with the issuances of the 1998 and 1999 Bonds were accurate.

140.    Best's negligent misrepresentations caused damage to the Bondholders.

WHEREFORE, each Bondholder respectfully requests judgment in its favor and against Best in the amount of its damages caused by the conduct of Best set forth above, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 14

### (Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 Promulgated Thereunder by the Piper Defendants Relating to the Accountant's Certificate and the Replacement Value Report for the 1999 Bonds)

141. Bondholders restate each of the foregoing Paragraphs as Paragraph 141 of this Count 14.

142. In connection with the sale of the 1999 Bonds, the Piper Defendants delivered to COF and the other 1999 Bondholders a copy of the 1999 Official Statement.

143. In connection with the sale of the 1999 Bonds, the Piper Defendants obtained from the Bondholders certain consents and approvals necessary for the issuance of the 1999 Bonds. In obtaining these consents and approvals, the Piper Defendants represented to the Bondholders that the conditions of Section 2.16 of the Original Trust Indenture had been satisfied.

144. In granting the necessary consents and approvals to the issuance of the 1999 Bonds, the Bondholders relied on the statements of the Piper Defendants that the conditions of Section 2.16 of the Original Indenture had been satisfied.

145. At the time they delivered to COF and the other 1999 Bondholders the 1999 Official Statement, and obtained the consents and approvals of the Bondholders required for the issuance of the 1999 Bonds, the Piper Defendants were aware that Section 2.16 of the Original Trust Indenture had not been satisfied because: (a) the Meriwether Letter that Crestland and the Piper Defendants delivered as the Accountant's Certificate required by Section 2.16 of the Original Trust Indenture did not, in fact, satisfy Section 2.16 of the Original Trust Indenture because Crestland had completed another fiscal year after the date of the Meriwether Letter and before the issuance of the 1999 Bonds, requiring a new Accountants' Certificate to address the recently concluded fiscal year; (b) Meriwether refused to issue an Accountant's Certificate that did comply with Section 2.16 of the Original Trust Indenture; and

(c) that the Replacement Value Report delivered by Crestland in purported satisfaction of Section 2.16 was false.

146. The 1999 Official Statement omitted to disclose these facts to COF and the other 1999 Bondholders. This omission was material.

147. COF and the other 1999 Bondholders relied on the 1999 Official Statement in their purchases of the 1999 Bonds.

148. The conduct of the Piper Defendants set forth above, in obtaining the consents and approvals of the Bondholders to the issuance of the 1999 Bonds, and delivering the 1999 Official Statement with knowledge that it omitted the material facts concerning compliance with Section 2.16 of the Original Trust Indenture, constituted violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

149. The misrepresentations of the Piper Defendants to the Bondholders in obtaining their consents and approvals to the issuance of the 1999 Bonds caused damages to the Bondholders. Had the consents and approvals not been given, Crestland would not have issued the 1999 Bonds. If Crestland had not issued the 1999 Bonds, the financial problems of Crestland would have been detected before the financial condition of Crestland deteriorated to the point that it ultimately did, and the recovery of the 1998 Bondholders from the Crestland bankruptcy would have been greater.

150. The omissions in the 1999 Official Statement delivered to the 1999 Bondholders by Piper caused damages to COF and the other 1999 Bondholders. Had the 1999 Official Statement disclosed to COF that the conditions of Section 2.16 had not been fulfilled, COF would not have purchased the 1999 Bonds.

WHEREFORE, COF respectfully requests judgment in its favor and against the Piper Defendants in the amount of the damages caused to COF by the foregoing conduct of the

Piper Defendants, attorneys' fees, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 15

### (Violation of Section 12 of the Securities Act of 1934 by Piper Relating to the Accountant's Certificate and the Replacement Value Report for the 1999 Bonds)

151.    Bondholders restate each of the foregoing Paragraphs as Paragraph 151 of this Count 15.

152.    Each of the Piper Defendants offered for sale and sold the 1999 Bonds by means of the 1999 Official. The 1999 Official Statement constituted a "prospectus" as such term is used in Section 12 of the Securities Act of 1933.

153.    The 1999 Official Statement contained omissions of material facts concerning the satisfaction of the requirements of Section 2.16 of the Original Trust Indenture necessary to the 1999 Official Statement not misleading.

154.    COF purchased the 1999 Bonds from Piper.

155.    COF justifiably relied on the 1999 Official Statement and was unaware of the omissions in the 1999 Official Statement concerning the satisfaction of the requirements of Section 2.16 of the Original Trust.

156.    COF would not have acquired the 1999 Bonds if it had known of the misrepresentations and omissions in the 1999 Official Statement.

WHEREFORE, COF respectfully requests judgment in its favor and against Piper, for the actual damages sustained by COF resulting from the conduct described above, along with costs, attorneys' fees, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 16

### (Common Law Fraud by the Piper Defendants Relating to the Accountant's Certificate and the Replacement Value Report for the 1999 Bonds)

157. Bondholders restate each of the foregoing Paragraphs as Paragraph 157 of this Count 16.

158. As set forth in detail above, the Piper Defendants made omissions concerning the satisfaction of Section 2.16 of the Original Trust Indenture by their delivery to COF of the 1999 Official Statement.

159. The Piper Defendants knew of the omissions in the 1999 Official Statement concerning the satisfaction of Section 2.16 of the Original Trust Indenture, and intended to deceive COF thereby.

160. COF relied on the omissions in the 1999 Official Statement concerning the satisfaction of Section 2.16 of the Original Trust Indenture.

161. COF's reliance on the Official Statements was reasonable.

162. The omissions in the 1999 Official Statement concerning the satisfaction of Section 2.16 of the Original Trust Indenture caused damages to COF, insofar as COF would not have purchased the 1999 Bonds if the omissions in the 1999 Official Statement had not been made.

163. The actions of the Piper Defendants were extreme and outrageous, and were undertaken with willful and wanton disregard for the rights of COF.

WHEREFORE, COF respectfully requests judgment in its favor and against the Piper Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, punitive damages, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 17

### (Negligent Misrepresentation by the Piper Defendants Relating to the Accountant's Certificate and the Replacement Value Report for the 1999 Bonds)

164. Bondholders restate each of the foregoing Paragraphs as Paragraph 164 of this Count 17.

165. As a securities broker-dealer, Piper is in the business of providing information. As individual registered representatives of Piper, Oswald and Cebuhar are also in the business of providing information.

166. As the underwriter and investment brokers, respectively, in connection with the issuance of the Bonds, Piper, Oswald and Cebuhar acted in the ordinary course of their business, profession and/or employment, and had a pecuniary interest in the 1999 bond transaction.

167. Prior to the issuance of the 1999 Bonds to COF, the Piper Defendants helped prepare and then delivered a copy of the 1999 Official Statement to COF.

168. The information supplied by the Piper Defendants in the 1999 Official Statement was for the benefit of COF and the other 1999 bondholders.

169. The Piper Defendants knew or should have known that COF was relying on the information the Piper Defendants provided it in the 1999 Official Statement and intended to influence COF with that information.

170. COF justifiably relied on the information the Piper Defendants provided it in the 1999 Official Statement.

171. The Piper Defendants' negligent misrepresentations, in the form of omissions concerning the satisfaction of Section 2.16 of the Original Trust Indenture, caused COF to suffer damages.

WHEREFORE, COF respectfully requests judgment in its favor and against the Piper Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, along with costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 18

### (Negligence of Piper Relating to the Accountant's Certificate and the Replacement Value Report for the 1999 Bonds)

172.    Bondholders restate each of the foregoing Paragraphs as Paragraph 172 of this Count 18.

173.    As the underwriter of the 1999 Bonds, Piper owed a duty to carefully investigate the accuracy of the information provided in the 1999 Official Statement.

174.    Piper breached that duty of care in connection with both 1998 and 1999 Bond issuances by failing to assure that the conditions established by Section 2.16 of the Original Trust Indenture for the issuance of additional bonds by Crestland had been satisfied. Piper's breach of its duty of care was the proximate cause of COF's injuries in that it caused COF to purchase the Bonds though they were not permitted to be issued by the Original Trust Indenture.

175.    Piper's negligence caused COF to suffer damages.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against Piper, for the actual damages sustained by such Plaintiff resulting from the conduct described above, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 19

### (Breach of Fiduciary Duty Relating to the Accountant's Certificate and the Replacement Value Report for the 1999 Bonds)

176.    Bondholders restate each of the foregoing Paragraphs as Paragraph 176 of this Count 19.

177.    As a securities broker in the transaction in which COF purchased the 1999 Bonds, Piper owed fiduciary duties to COF.

178.    Piper breached its fiduciary duty to COF in connection with COF's purchase of the Bonds by failing to assure that the conditions established by Section 2.16 of the Original Trust Indenture for the issuance of additional bonds by Crestland had been satisfied.

179.    COF has been damaged as a result of Piper's breach of his fiduciary duties.

180.    The actions of the Piper Defendants were extreme and outrageous, and were undertaken with willful and wanton disregard for the rights of COF.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against Piper, for the actual damages sustained by such Plaintiff resulting from the conduct described above, punitive damages, costs, attorneys' fees and expenses and interest as allowed by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 20

<u>(Aiding and Abetting Violations of the Iowa Securities Act  by the Brick Defendants
Relating to the Accountant's Certificate and
the Replacement Value Report for the 1999 Bonds)</u>

181.    Bondholders restate each of the foregoing Paragraphs as Paragraph 181 of this Count 20.

182.    Crestland violated Section 502.502 of the Iowa Code in the sale of the 1999 Bonds without properly satisfying the conditions of Section 2.16 of the Original Trust Indenture.

183.    The Brick Defendants were agents of Crestland in connection with the sale of the 1999 Bonds.

184.    In violation of Section 502.503 of the Iowa Code, the Brick Defendants materially aided and abetted the sale of the 1998 Bonds and the 1999 Bonds.

185.    The Brick Defendants are liable to the Bondholders pursuant to Section 502.503(1) of the Iowa Code.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against the Brick Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, costs, attorneys' fees and expenses, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 21

<u>(Aiding and Abetting Violations of the Iowa Securities Act by the Best Defendants
Relating to the Accountant's Certificate and
the Replacement Value Report for the 1999 Bonds)</u>

186.    Bondholders restate each of the foregoing Paragraphs as Paragraph 186 of this Count 21.

187.    Piper violated Section 502.502 of the Iowa Code in the sale of the 1999 Bonds.

188.    The Best Defendants were agents of Piper in connection with the sale of the 1999 Bonds without properly satisfying the conditions of Section 2.16 of the Original Trust Indenture.

189.    In violation of Section 502.503 of the Iowa Code, the Best Defendants materially aided and abetted the sale of the 1998 and 1999 Bonds.

190.    The Best Defendants are liable to the Bondholders pursuant to Section 502.503(1) of the Iowa Code.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against the Best Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, along with costs, attorneys fees and interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 22

### (Negligence of Brick Relating to the Security for the Bonds Relating to the Accountant's Certificate and the Replacement Value Report for the 1999 Bonds)

191.    Bondholders restate each of the foregoing paragraphs as Paragraph 191 of this Count 22.

192.    Brick issued an opinion letter in connection with the issuance of the 1999 Bonds.

193.    The Brick opinion letter in connection with the issuance of the 1999 Bonds represented that to Brick's knowledge there were no material misrepresentations or omissions in the 1999 Official Statement.

194.    The foregoing statement in the Brick opinion letter was inaccurate, insofar as the 1999 Official Statement omitted to state that the conditions established by Section 2.16 of the Original Indenture for the issuance of additional bonds by Crestland had not been satisfied.

195.    Brick was aware of the facts establishing the existence of this omission.

196.    Brick could foresee that the Bondholders would rely on the foregoing statement in its opinion letter. Accordingly, Brick owed a duty to the Bondholders to act with due care in the issuance of its opinion letter in connection with the 1999 Bonds.

197.    The failure of Brick to exercise due care in the issuance of its opinion letter caused damage to the Bondholders.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against Brick, for the actual damages sustained by such Plaintiff resulting from the conduct described above, along with costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 23

### (Negligence of Best Relating to the Accountant's Certificate and the Replacement Value Report for the 1999 Bonds)

198.    Bondholders restate each of the foregoing Paragraphs as Paragraph 198 of this Count 23.

199.    Best issued an opinion letter in connection with the issuance of the 1999 Bonds.

200.    The Best opinion letter issued in connection with the issuance of the 1999 Bonds stated that to Best's knowledge there were no material misstatements or omissions in the 1999 Official Statement.

201.    The foregoing statement in the Best opinion letter was inaccurate, insofar as the 1999 Official Statement omitted to state that the conditions established by Section 2.16 of the Original Indenture for the issuance of additional bonds by Crestland had not been satisfied.

202.    Best was aware of the facts establishing the existence of this omission.

203.    Best could foresee that the Bondholders would rely on the foregoing statement in its opinion letter. Accordingly, Best owed a duty to the Bondholders to act with due care in the issuance of its opinion letters in connection with the 1999 Bonds.

204.    The failure of Best to exercise due care in the issuance of its opinion letter caused damage to the Bondholders.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against Best, for the actual damages sustained by such Plaintiff resulting from the conduct described above, along with costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 24

### (Negligent Misrepresentation by Brick Relating to the Accountant's Certificate and the Replacement Value Report for the 1999 Bonds)

205.    Bondholders restate each of the foregoing Paragraphs as Paragraph 205 of this Count 24.

206.    As a law firm, Brick is in the business of providing information.

207.    Brick owed a duty to COF to use due care to provide accurate information in its opinion letter delivered in connection with the issuances of the 1999 Bonds. Brick could foresee that COF would rely on its opinion letter.

208.    Brick's opinion letter in connection the 1999 Bonds contained material misrepresentations, to the effect that the 1999 Official Statement did not contain omissions, when in reality the 1999 Official Statement omitted to state that the conditions established by Section 2.16 of the Original Indenture for the issuance of additional bonds by Crestland had not been satisfied.

209.    COF relied on the representations in the Brick opinion letters in connection with their purchases of the 1999 Bonds.

210. Brick breached its duty of due care by its failure to assure that its opinion letters in connection with the issuance of the 1999 Bonds was accurate.

211. Brick's negligent misrepresentations caused damage to the Bondholders.

WHEREFORE, COF respectfully requests judgment in its favor and against Brick in the amount of its damages caused by the conduct of Brick set forth above, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 25

### (Negligent Misrepresentation by Best Relating to the Accountant's Certificate and the Replacement Value Report for the 1999 Bonds)

212. Bondholders restate each of the foregoing Paragraphs as Paragraph 212 of this Count 13.

213. As a law firm, Best is in the business of providing information.

214. Best owed a duty to the Bondholders to use due care to provide accurate information in its opinion letter delivered in connection with the issuance of the 1999 Bonds. Best could foresee that the Bondholders would rely on its opinion letter.

215. Best's opinion letter in connection the 1999 Bonds contained material misrepresentations, to the effect that the 1999 Official Statement did not contain omissions, when in reality the 1999 Official Statement omitted to state that the conditions established by Section 2.16 of the Original Indenture for the issuance of additional bonds by Crestland had not been satisfied.

216. COF relied on the representations in the Best opinion letter in connection with COF's purchase of the 1999 Bonds.

217. Best breached its duty of due care by its failure to assure that its opinion letter in connection with the issuances of the 1999 Bonds was accurate.

218. Best's negligent misrepresentations caused damage to COF.

WHEREFORE, COF respectfully requests judgment in its favor and against Best in the amount of its damages caused by the conduct of Best set forth above, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

## COUNT 26

### (Tortious Interference with Contract by Piper)

219. Bondholders restate each of the foregoing Paragraphs as Paragraph 219 of this Count 26.

220. The 1998 Bonds and the Original Trust Indenture constituted valid, binding and enforceable contracts between Crestland and the Bondholders.

221. The issuance by Piper of the 1999 Bonds without compliance with Section 2.16 of the Original Trust Indenture constituted a breach of the Original Trust Indenture and the 1998 Bonds.

222. By facilitating the issuance of the 1999 Bonds without compliance with Section 2.16 of the Original Trust Indenture, Piper improperly interfered with the contracts of the Bondholders.

223. The interference caused damage to the Bondholders.

224. The actions of Piper were extreme and outrageous, and were undertaken with willful and wanton disregard for the rights of the Bondholders.

WHEREFORE, each of the Bondholders respectfully requests judgment in its favor and against the Piper Defendants, for the actual damages sustained by such Plaintiff resulting from the conduct described above, punitive damages, costs, interest as permitted by law, and such other and further relief as the Court deems just and appropriate.

### Jury Demand

Plaintiffs demand trial by jury on all claims so triable.

Dated: June 30, 2003

Timothy J. Hill (#LI00015821)
William T. McCartan (#LI0014446)
Kimberly H. Blankenship (#LI0017345)
BRADLEY & RILEY PC
2007 First Avenue SE
PO Box 2804
Cedar Rapids, IA 52406-2804
Phone: 319-363-0101
Fax: 319-363-9824
Email: thill@bradleyriley.com
       mbccart@bradleyriley.com
       kblanken@bradleyriley.com

Attorneys for the Plaintiff Bondholders